# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

EDWARD GRIFFOR,
MARIELA GRIFFOR,

                 Plaintiffs,             CASE NO. 16-12552
                                          HON. DENISE PAGE HOOD

v.

BSI FINANCIAL SERVICES
VENTURES TRUST 2013-I-H-R By
MCM CAPITAL PARTNERS LLC,
BANK OF AMERICA N.A.,

                 Defendants.
_____/

## ORDER GRANTING DEFENDANT BANA'S MOTION TO DISMISS [#9] AND GRANTING DEFENDANTS BSI, TRUST, AND MCM'S JOINT MOTION TO DISMISS [#13]

## I.     BACKGROUND

On June 7, 2016, Plaintiffs Edward Griffor and Mariela Griffor ("the Griffors") filed a Complaint against Defendants Service One, Inc., d/b/a BSI Financial ("BSI"); Ventures Trust 2012-I-H-R ("Trust"); MCM Capital Partners, LLLP ("MCM"); and Bank of America, N.A. ("BANA") in the Wayne County Circuit Court.  The Complaint alleges Breach of Contract (Count I); Violation of the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act (Count II); Defamation (Count III); Negligence (Count IV); and Breach of Oral Contract

(Count V).  (Doc # 1-2, Pg ID 12-20)  BANA filed a Notice of Removal based upon diversity jurisdiction on July 7, 2016.  (Doc # 1)  On August 2, 2016, BANA filed a Motion to Dismiss.  (Doc # 9)  On August 12, 2016, BSI, Trust, and MCM filed a Joint Motion to Dismiss.  (Doc # 13)   Responses and Replies have been filed.  (Doc # 17; Doc # 18; Doc # 20; Doc # 22)

The Griffors are husband and wife who own the property at 1342 Three Mile Drive in the City of Grosse Pointe Park ("Property").  (Doc # 1-2; Pg ID 13)  On November 7, 2007, Edward Griffor signed a Note to borrow $417,000.00 from LaSalle Bank.  (Doc # 9-3)  To secure payment, the Griffors granted a Mortgage on the Property to LaSalle Bank.  (Doc # 9-2)  The Griffors declared bankruptcy in 2010.  (Doc # 1-2, Pg ID 14)  The loan was assigned to BANA in 2011, and the Complaint alleges that payments were made to BANA.  *Id.*

According to the Griffors, on or around January 2013, monthly statements from BANA showed that payments were not being credited to the Griffors' account.  *Id.*  The Griffors contacted BANA and supplied the requested information.  *Id.*  They began experiencing economic hardship in 2014 and contacted BANA to request a loan modification.  *Id.*

In late 2014, BANA transferred servicing of the Mortgage to BSI.  *Id.*  The Griffors allege that BANA assured them that the loan modification was in process and would be transferred to BSI.  *Id.*  The Griffors claim that they tried to contact

BSI to no avail, and that from February 2015 to present, BSI and/or Trust has transmitted false information about the Griffors to various credit reporting agencies, causing their credit to be impaired. *Id.* In December 2015, the Griffors wrote to BSI "detailing the disputed misappropriation of payments" and requesting documentation of all payments made to date. *Id.* On February 2, 2016, BSI wrote to the Griffors indicating that no payments had been received since June 2011. *Id.* at 15. On February 25, 2016, BSI issued a Notice of Default and Intent to Accelerate on behalf of Trust. *Id.* In March 2016, the Griffors requested detailed accounting from BSI of all payments made on the loan to date. *Id.* BSI responded that the request for information was overbroad and unduly burdensome. *Id.* Plaintiffs replied "disputing the accounting practices" and indicating that funds were missing. *Id.* In early 2016, a Notice of Foreclosure for the Mortgage was published setting a Sheriff's sale date of June 6, 2016 for the Property. *Id.* On June 15, 2016, a Circuit Court Judge granted the Griffors a Temporary Restraining Order staying the foreclosure sale. (Doc 1-2, Pg ID 23-25)

## II.   ANALYSIS

### A. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This type of motion tests the legal sufficiency of the plaintiff's

complaint.  *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe

the complaint in the light most favorable to the plaintiff, accept its allegations as

true, and draw all reasonable inferences in favor of the plaintiff."  *Directv Inc. v.*

*Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  A court, however, need not accept as

true legal conclusions or unwarranted factual inferences."  *Id.* (quoting *Gregory v.*

*Shelby Cnty.*, 220 F.3d 443, 446 (6th Cir. 2000)).  "[L]egal conclusions

masquerading as factual allegations will not suffice."  *Edison v. State of Tenn.*

*Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

      As the Supreme Court has explained, "a plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do.  Factual

allegations must be enough to raise a right to relief above the speculative level… ."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see*

*LULAC v. Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007).  To survive dismissal, the

plaintiff must offer sufficient factual allegations to make the asserted claim

plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  "A claim has

facial plausibility when the pleaded factual content allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

**B. Claims Against MCM**

MCM argues that it has no connection to the present litigation because it has acted only as a Trustee and is not the owner of or party to the Mortgage or Note. In their Response, the Griffors concede that all counts should be dismissed as to MCM with prejudice because MCM is merely acting as Trustee for the Mortgage holder.  (Doc # 17, Pg ID 215)  The Complaint itself describes MCM as "a trustee for mortgage-backed securitized trusts."  (Doc # 1-2, Pg ID 13)  The Court dismisses all claims against MCM with prejudice.

**C. Breach of Contract Claim**

The Griffors claim that "Defendants" breached the Note and Mortgage that the Griffors signed in 2007 "by failing to apply payments made by Plaintiffs to Plaintiffs' loan," as required by the terms of the Note.  (Doc # 1-2)  The Complaint alleges that this "led to the Defendants filing foreclosure action on the Property," and the Griffors have suffered compensatory damages.

BSI and Trust argue that the Griffors have failed to allege that BSI or Trust breached the Mortgage contract or what part of the Mortgage contract was breached.  BSI and Trust further argue that the Griffors have failed to allege that they made all the payments that were due, that the payments were made timely, or who the payments were made to.  BSI and Trust note that the Griffors have not alleged that they ever made payments after January 2013.

To state a claim for breach of contract in Michigan, a plaintiff must allege: (1) the existence of a valid contract, (2) the terms of the contract, (3) breach of the contract, and (4) an injury caused by the breach. *See Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999).

The Court finds that the Breach of Contract claim fails as to BSI and Trust because the Griffors have not alleged that they ever made payments after January 2013, or that they ever made payments to BSI and/or Trust.  The Complaint merely alleges that "payments were made" to BANA (Doc # 1-2, Pg ID 14), and the Response states that "Plaintiffs made payments directly through the Bankruptcy Court until January 2013" (Doc # 17, Pg ID 212).  The Griffors cannot meet the third element of a breach of contract claim because they cannot establish that BSI or trust breached the contract by failing to apply any payments.  Plaintiffs claim in their Response that "the facts in this case are so numerous and cumbersome that not all of the payments and account information could be included in one factual statement in the Complaint."  The Griffors' factual allegations must nevertheless "be enough to raise a right to relief above the speculative level … ." *Twombly*, 550 U.S. at 555.

BANA argues that the Griffors have failed to allege any specific facts that show that BANA breached the terms of the Note and Mortgage.  BANA argues that even if they "failed to apply" payments, that does not establish the existence of

6

a breach under the terms of the Note and Mortgage.  The Griffors respond with a new allegation that a contract existed with BANA, other than the original Note and Mortgage.   In their Response, the Griffors allege that BANA breached a modification agreement by failing to communicate the assignment of interest to Trust, by losing documents, by repeatedly requesting documents it had already received, by giving conflicting and confusing instructions to the Griffors, by not responding to inquiries, and by making mistakes in processing documents.

The new allegations against BANA are not in the Complaint, and the Griffors also attach new documents to their Response that were not attached to the Complaint.  The Court will not consider these.  Even if the Court were to consider these, the Griffors would still fail to state a Breach of Contract Claim against BANA because they fail to attach or allege a *written* modification contract as required under Michigan's Statute of Frauds, which provides as follows.

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:  .  .  .  A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

Mich. Comp. Laws § 566.132.  BANA is a "financial institution" under Mich. Comp. Laws § 566.132(3) which covers a national chartered bank.  The letter from BANA that the Griffors attach to their Response states that BANA was still

evaluating the request for loan assistance, and that BANA was "unable to provide you with a decision at this time . . . ." (Doc # 18-6, Pg ID 296) The Court finds that the Griffors have failed to allege the existence of a valid modification contract.

The Court concludes that the Griffors have failed to state a Breach of Contract claim as to all Defendants.

### D. Violation of the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act Claim

The Griffors claim that "Defendants" violated the Michigan Mortgage Brokers, Lenders, and Services Licensing Act ("MMBLSLA") by "knowingly distribut[ing] and/or caus[ing] or permit[ting] to be distributed false, misleading, or deceptive statements or representations with regard to the terms or conditions for a mortgage loan, and ma[king] false promises and/or misrepresentations as to an essential or material fact in the course of business." (Doc # 1-2, Pg ID 16)

BANA argues that the MMBLSLA does not apply to BANA because, as a nationally chartered bank, it is a "depository financial institution" under Mich. Comp. Laws § 445.1672. Plaintiffs agree that BANA is exempt from this claim and maintain that this claim is against BSI and Trust only. In their Response, the Griffors concede that the MMBLSLA does not apply to BANA. (Doc # 18, Pg ID 262) The Complaint itself describes BANA as "national banking association." (Doc # 1-2, Pg ID 13) The Court dismisses this claim against BANA.

BSI and Trust first argue that the Griffors do not have a private right to a cause of action under the MMBLSLA because they fail to allege that they ever filed a complaint with the commissioner.   The Griffors respond that the MMBLSLA does provide a private right to a cause of action.

The MMBLSLA imposes licensing requirements on mortgage brokers, lenders, and services.   Mich. Comp. Laws § 445.1651 *et seq.*   The MMBLSLA also prohibits a licensee or registrant from "[e]ngag[ing] in fraud, deceit, or material misrepresentation in connection with any transaction governed by this act." *Id.* at § 445.1672(b).   Pursuant to Section 445.1681(1),

> [w]hether or not a person seeks damages or has an adequate remedy at law, any person . . . may bring an action . . . to do any of the following:   (a) Obtain a declaratory judgment that a method, act, or practice is a violation of this act.   (b) Obtain an injunction against a person who is engaging in or is about to engage in a method, act, or practice that violates this act. (c) . . .   recover    actual    damages resulting from a violation of this act, or $250.00, whichever is greater, together with reasonable attorney fees and the costs of bringing the action.

BSI and Trust cite Section 445.1663; however, the language related to filing a complaint with the commissioner is permissive, not mandatory:   "The attorney general, the commissioner, or any other person may file a complaint with the commissioner alleging that a person has violated this act . . . .   Upon receipt of a complaint, the commissioner may begin an investigation pursuant to the provisions of this act."   The Court concludes that the Griffors have a private right to a cause

of action.  *See Yaldu v. Bank of America Corp.*, 700 F. Supp. 2d 832, 846 (E.D. Mich. 2010) (citing § 445.1681(1) and finding that the MMBLSLA provides an individual cause of action).

BSI and Trust next argue that the Griffors fail to allege a violation of the MMBLSLA in that they fail to allege facts that constitute "fraud, deceit, or material misrepresentation."  BSI and Trust assert that the Complaint merely recites the statute.  The Griffors respond that the Complaint sufficiently alleges that BSI and Trust engaged in fraud in the inducement by failing to provide material information and payment disclosures to the Griffors.

"Fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon."  *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 210 Mich. App. 636, 639 (1995).  To state a claim for fraud-in-the-inducement in Michigan, a plaintiff must allege that:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention  that  the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 477 (2003).

The Complaint alleges that in December 2015, the Griffors wrote to BSI "detailing the disputed misappropriation of payments" and requesting documentation of all payments made to date. (Doc # 1-2, Pg ID 14) On February 2, 2016, BSI wrote to the Griffors indicating that no payments had been received since June 2011. *Id.* at 15. On February 25, 2016, BSI issued a Notice of Default and Intent to Accelerate on behalf of Trust. *Id.* In March 2016, the Griffors requested detailed accounting from BSI of all payments made on the loan to date. *Id.* BSI responded that the request for information was overbroad and unduly burdensome. *Id.* The Griffors replied "disputing the accounting practices" and indicating that funds were missing. *Id.* As noted above, the Griffors have failed to allege that they ever made payments after January 2013 or that they ever made payments to BSI or Trust.

The Court finds that these allegations are insufficient to state a claim of fraud in the inducement against BSI and Trust. Plaintiffs fail to allege how the alleged misrepresentation—refusing to provide payment disclosures—was material, how it was false, or even how the Griffors relied upon it. The Griffors allege in their Response (not in the Complaint) that BSI and Trust intended for the Griffors to "[forego] their option to explore other means of loan modification or forbearance," but the Complaint is devoid of facts that support that.

11

The Court concludes that the Griffors have failed to state a Violation of the MMBLSLA claim as to all Defendants.

### E. Defamation Claim

The Griffors claim that, as a proximate result of the negligent or reckless conduct of BSI and Trust, their credit has been impaired.  (Doc # 1-2, Pg ID 17) BANA asserts that some of the allegations in the Complaint are vague and do not identify the parties they are alleged against.  In their Response, the Griffors clarify that their defamation claim applies to BSI and Trust only, and not to BANA.  (Doc # 18, Pg ID 262)  The Court dismisses this claim against BANA.

BSI and Trust argue that the defamation claim is preempted by the Fair Credit Reporting Act ("FCRA").  15 U.S.C. § 1681 *et seq.*  The Griffors respond that their defamation claim is not preempted because they allege that BSI and Trust had a willful intent to injure Mariela Griffor.

Under Section 1681t(b)(1)(F) of the FCRA, "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies."  Section 1681s-2 of the FCRA explains the duties of furnishers of information to provide accurate information, as well as the obligations of furnishers once they are notified of a dispute.   Section 1681s-2 of the FCRA specifically prohibits furnishers of

information from furnishing "any information relating to a consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." *Id.* at § 1681s-2(a)(1)(A). Courts have therefore interpreted Section 1681t(b)(1)(F) of the FCRA as preempting state law defamation claims predicated on the furnisher of credit information furnishing inaccurate information after the furnisher received notice of, or had reason to know about the dispute, since that is subject matter regulated under Section 1681s-2. *See Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 787-88 (W.D. Ky. 2003).

The FCRA also includes another provision, Section 1681h(e), which the Griffors rely on to support their argument that their defamation claim is not preempted by the FCRA. Section 1681h(e) provides that "no consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer. Under this provision, a state law defamation claim that is not covered by Section 1681s-2 would be permitted but would require a higher standard of proof. *See Stafford*, 262 F. Supp. 2d at 785.

To the extent that the Griffors allege that BSI or Trust furnished any inaccurate information *after* receiving notice from the Griffors of a dispute, such conduct of BSI or Trust "falls squarely within 1681s-2." *See id.* at 787-88.

13

Section 1681t(b)(1)(F) preempts such a defamation claim.  To the extent that the Griffors allege that BSI or Trust furnished any inaccurate information *before* knowing or having reason to know about the Griffors' dispute, the Griffors must be able to establish that BSI or Trust acted maliciously or with a willful intent to injure the Griffors to proceed under Section 1681h(e).  Assuming that the Griffors could establish that BSI or Trust acted maliciously or with a willful intent in furnishing inaccurate information before having reason to know about the dispute, such a defamation claim would be preempted by Section 1681t(b)(1)(F) because Section 1681s-2 regulates the furnishing of information if done knowingly or if the furnisher has reasonable cause to believe that the information is inaccurate.  *See id.* at 788.

The last remaining question is whether the Griffors have stated a defamation claim for a subject matter not regulated under Section 1681s-2, and at the same time, are able to meet the higher standard of proof required under Section 1681h(e).  The Complaint alleges that BSI and/or Trust "has transmitted to various credit reporting agencies, including Equifax, false information about the Plaintiffs, causing their credit to be impaired."  (Doc # 1-2, Pg ID 14)  The Griffors argue that BSI and Trust had no right to defame Mariela Griffor because she only signed the Mortgage, not the Note.  As a result, she is not personally liable for the debt, as specified in the Mortgage.  The Griffors assert that BSI and Trust willfully

14

intended to injure her by reporting her negatively to the credit agency for failure to pay a debt she was not responsible for.  The Griffors also argue that BSI and Trust had no right to report their credit information while they were actively pursuing a loan modification.  The Court finds that, at bottom, all of the Griffors' defamation allegations involve conduct on the part of BSI and Trust specifically related to their function as furnishers of credit information.  That is precisely the subject matter regulated by Section 1681-s2.  Section 1681t(b)(1)(F) preempts the Griffors' defamation claim.

The Court concludes that the Griffors have failed to state a Defamation claim as to all Defendants.

**F. Negligence Claim**

The Griffors claim that "Defendants" breached their duty of care and skill to the Griffors in servicing their loan by failing to properly and accurately credit payments made by the Griffors toward the loan.  (Doc # 1-2, Pg ID 17)  The Complaint alleges that Defendants had a duty to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting, and servicing of loan records including accurate crediting of payments made by the Griffors.

BANA, BSI, and Trust argue that dismissal of this claim is proper because the Griffors have not alleged that BANA, BSI, or Trust owed them a duty that is

separate and distinct from their contractual obligations under the Note and Mortgage. The Griffors respond, without citing any legal authority, that BANA owed them a duty that is distinct from the lender-borrower relationship—the duty to deal fairly and honestly with them, handle their loan modification application properly, provide basic information regarding their loan, and maintain accurate servicing records of their loan. The Griffors assert that BANA negligently frustrated the loan modification negotiation process by not processing documents or communicating in a timely manner until the loan could be assigned to BSI and Trust. The Griffors also respond, without citing any legal authority, that BSI and Trust owed them a duty that is distinct from the lender-borrower relationship—the duty to exercise reasonable care in processing, reviewing, and responding to the Griffors' requests for information.

"The requisite elements of a negligence cause of action are that the defendant owed a legal duty to the plaintiff, that the defendant breached or violated the legal duty, that the plaintiff suffered damages, and that the breach was a proximate cause of the damages suffered." *Schultz v. Consumers Power Co.*, 443 Mich. 445, 449 (1993). "The Michigan Supreme Court has held that in 'tort actions based on a contract,' courts should use a 'separate and distinct mode of analysis.' . . . [T]he threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations.

If no independent duty exists, no tort action based on a contract will lie." *Galati v. Wells Fargo Bank*, No. 11-11487, 2011 WL 5178276, at *8 (E.D. Mich. Nov. 1, 2011) (citing *Fultz v. Union–Commerce Assoc.*, 470 Mich. 460, 467 (2004); *Hart v. Ludwig*, 347 Mich. 559, 565–66 (1956)).

The Griffors have alleged that BANA, BSI, and Trust owed them a duty to accurately credit payments, a duty to handle the loan modification application properly, and a duty to provide information about the loan.  These duties all arise, if at all, from the Note and the Mortgage.   For example, Paragraph Three of the Note states that "[e]ach monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal."  (Doc # 9-3, Pg ID 87) Paragraph Two of the Mortgage specifies how payments by the Borrower will be applied by the Lender.  (Doc # 9-2, Pg ID 80)  Paragraph Twelve of the Mortgage specifies that "extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender. . . shall not operate to release the liability of Borrower . . . .  Any forbearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy."  *Id.* at 83.  Paragraph Fifteen of the Mortgage specifies how Notices from the Borrower to the Lender as well as Notices from the Lender to the Borrower regarding the Mortgage will be given.  *Id.* at 84.

The Court finds that the Griffors' negligence claim fails because they have not alleged that BANA, BSI, or Trust owed them a duty that is separate and distinct from their contractual obligations. *See, e.g., Galati*, 2011 WL 5178276, at *8 (holding that lending institutions did not owe borrower a duty to comply with relevant industry standards for the lending industry or a duty to comply with local, state, and federal regulations); *Ulrich v. Fed. Land Bank of St. Paul*, 192 Mich. App. 194, 198-200 (1991) (holding that lending institution did not owe borrower a duty of care with respect to determining borrower's eligibility for the loan); *Polidori v. Bank of Am., N.A.*, 977 F. Supp. 2d 754, 763-64 (E.D. Mich. 2013) (holding that lending institution did not owe borrower a duty to conduct a reasonable inquiry as to whether he would be able to qualify for a loan modification). In each of the aforementioned cases, the alleged duty did not exist under Michigan law, as is the case here. Rather, the plaintiffs' allegations relating to the duties of lending institutions arose, if at all, from the notes and the mortgages. The same reasoning applies to the Griffors' allegations; no independent duty exists here, and a negligence action based on the contract will not lie.

The Court concludes that the Griffors have failed to state a Negligence claim as to all Defendants.

18

**G. Breach of Oral Contract Claim**

The Griffors claim that BANA, BSI, and Trust breached an oral contract because they assured the Griffors that they were approved for a loan modification and that the modification would be transferred when the loan was assigned from BANA to BSI in 2014.  The Griffors assert that BSI and Trust did not honor the loan modification as their representatives had assured the Griffors they would.

BANA argues that the Griffors claims are barred by Michigan's Statute of Frauds.  In their Response, the Griffors concede that there was no guarantee that the loan modification would be granted, but they assert that BANA's mishandling of the documents deprived the Griffors of the possibility of obtaining the loan modification.  The Griffors argue that an oral contract was formed when a BANA representative told them that their junior lien would be discharged and that they would receive a loan modification if all documents were returned.  The Griffors also argue that the doctrine of equitable estoppel and partial performance remove their claim from the Statute of Frauds.

As discussed above, even if the Court were to consider new documents attached to the Griffors' Response, the Griffors would fail to state a claim against BANA because they fail to attach or allege a *written* modification contract as required under Michigan's Statute of Frauds, which provides as follows.

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial

> institution unless the promise or commitment is in writing and signed
> with an authorized signature by the financial institution: . . . A
> promise or commitment to renew, extend, modify, or permit a delay in
> repayment or performance of a loan, extension of credit, or other
> financial accommodation.

Mich. Comp. Laws § 566.132.   BANA is a "financial institution" under Mich.

Comp. Laws § 566.132(3), which covers a national chartered bank.   The letter

from BANA that the Griffors attach to their Response states that BANA was still

evaluating the request for loan assistance, and that BANA was "unable to provide

you with a decision at this time . . . ."   (Doc # 18-6, Pg ID 296)   The Court finds

that the Griffors have failed to allege the existence of a valid modification contract.

The unambiguous language of the Statute of Frauds plainly states that the

Griffors are precluded from bringing this claim "no matter its label" against

BANA, a financial institution, to enforce the terms of an oral promise to waive a

loan provision.  *See Crown Tech. Park v. D&N Bank, FSB*, 242 Mich. App. 538,

550 (2000) (finding that promissory estoppel claim based on reliance on a loan

modification agreement was barred by the Statute of Frauds without evidence of a

written modification agreement).   The Court finds that the doctrine of equitable

estoppel does not remove the claim from the Statue of Frauds. *See Vittands v. Bank

of Am.*, NA, No. 11-CV-15241, 2012 WL 1696708, at *4 (E.D. Mich. May 15,

2012) (finding that estoppel claim was merely a creative attempt at skirting the

evidentiary burden established by the Statute of Frauds, which Michigan courts

have made clear "effectuates a broad ban on claims against financial institutions to enforce promises regarding loan modifications").  Likewise, the Court finds that partial performance does not remove the claim from the Statute of Frauds.  *See Saad v. Wayne Cnty. Register of Deeds*, No. 11-15590, 2013 WL 3455628, at *6 (E.D. Mich. July 9, 2013) ("[P]art performance is not sufficient to remove a claim from the statute of frauds applicable to financial institutions.")  The Court dismisses this claim against BANA.

BSI and Trust argue that the Griffors have failed to allege the elements of a breach of oral contract claim.  In their Response, the Griffors allege that they applied and were approved for a new loan modification with BSI, but that BSI and Trust failed to honor the terms of the modification agreement as BANA had assured the Griffors that BSI and Trust would do.

To state a claim for breach of oral contract in Michigan, a plaintiff must first allege "the essential contractual elements:  competent parties, proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation." *Downriver Maint. Corp. v. Decker*, No. 232875, 2002 WL 31012608, at *3 (Mich. Ct. App. Aug. 30, 2002) (unpublished).  The Griffors fail to allege legal consideration, mutuality of agreement, or mutuality of obligation.  In short, an oral contract did not even exist between the Griffors and BSI and/or Trust.  The Griffors' concede in their Response that it was BANA representatives who

21

allegedly made promises regarding the loan modification and how it would be honored following the assignment. (Doc #17, Pg ID 225)  The Complaint at paragraph 14 also alleges that it was BANA who assured the Griffors that the loan modification would be transferred to BSI. The Court dismisses this claim against BSI and Trust.

The Court concludes that the Griffors have failed to state a Breach of Oral Contract claim as to all Defendants.

The Griffors have failed to state any claim against any Defendant, and accordingly, the Court will dismiss this action.

## III.   CONCLUSION:

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant BANA's Motion to Dismiss (Doc # 9) is GRANTED.

IT IS FURTHER ORDERED that Defendants BSI, Trust, and MCM's Joint Motion to Dismiss (Doc # 13) is GRANTED.

IT IS FURTHER ORDERED that this action is DISMISSED with prejudice.

Dated:  March 31, 2017                    s/Denise Page Hood
                                        Chief, U.S. District Court

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2017, by electronic and/or ordinary mail.

                                        s/LaShawn R. Saulsberry
                                        Case Manager